PHILIP A. TORTORETI, ESQ. (PT4465)
TORTORETI, TOMES & CALLAHAN, P.C.
150 B TICES LANE
EAST BRUNSWICK, NEW JERSEY 08816
TELEPHONE: (732-257-9100)

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RUTH KORONTHALY, individually and on behalf of all others similarly situated, | : | |
| | : | |
| Plaintiff, | : | |
| | : | *07 CV* _____ |
| -against- | : | |
| | : | **CLASS ACTION COMPLAINT** |
| L'ORÉAL USA, INC., a New York Corporation, and THE PROCTER & GAMBLE COMPANY, an Ohio Corporation, | : | **JURY TRIAL DEMANDED** |
| | : | |
| Defendants. | : | |

Plaintiff, Ruth Koronthaly ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned counsel, alleges as follows:

### NATURE OF THE ACTION

1.       Plaintiff resides at 65 Randolph Place, South Orange, New Jersey. The principal place of business of Defendant, L'Oréal USA, Incorporated ("L'Oréal") is located at 575 5th Avenue, New York, New York and the principal place of business of The Procter & Gamble Company ("P&G") is One Procter and Gamble Plaza, Cincinnati, Ohio.

2.       Plaintiff brings this action as a Class Action pursuant to Rules 23(a), (b)(l), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all persons who purchased for use and not resale lipstick containing lead that was manufactured, marketed, and/or distributed by

L'Oréal, and on behalf of all persons who purchased for use and not resale lipstick containing lead that was manufactured, marketed, and/or distributed by P&G (collectively referred to as "Defendants"), from the first sale of the concerned lipstick products as herein defined in the United States, but not earlier than ten years from the filing of this complaint (the "Relevant Period"). Excluded from the Plaintiff Class are each Defendant's officers and directors.

3.      During the Relevant Period, Defendants manufactured, imported, and/or distributed the concerned lipstick products that contain dangerous and harmful levels of lead, which is poisonous, especially if ingested.

4.      Defendants' marketing of the concerned lipstick products affirmatively and impliedly represented the products as being suitable for ordinary use.

5.      Defendants have manufactured or caused to be manufactured, marketed, and/or distributed millions of the concerned lipstick products designed for consumers of all ages for the main purpose of applying said products to the user's lips, despite the fact that the concerned lipstick products contained lead. Defendants did so despite the clear and obvious dangers posed by the inclusion of lead in their lipstick products, and the fact that the ingestion of lead by consumers can cause serious long-term injury.

6.      Despite the presence of lead in the concerned lipstick products, Defendants failed to list lead as an ingredient in said products and, to date, Defendants have not recalled the concerned lipstick products, nor have they offered to reimburse Plaintiff or other members of Plaintiff Class for the costs of the concerned lipstick products, nor provided for any other relief.

7.      The concerned lipstick products manufactured or caused to be manufactured, marketed, and/or distributed by Defendants are not fit for their ordinary use. Consumers purchasing them, including Plaintiff, did not receive the benefit of their bargain.

8.      As a result of Defendants' negligent and reckless conduct, Plaintiff and the other members of the Plaintiff Class have been improperly exposed to a known hazardous substance, and have been sold a product not fit for its intended purpose.  Due to such exposure, these individuals are at an increased risk of being poisoned by lead. Early detection of lead poisoning, through medical testing, is made advisable by Defendants' manufacturing, marketing, and distribution of the concerned lipstick products.

9.      Defendants' marketing, advertising, promotion and labeling of the concerned lipstick products was and is misleading, inaccurate and deceptive.

10.      Accordingly, Plaintiff brings this action to recover the actual and compensatory damages for the monies expended by herself and the Plaintiff Class for the concerned products and for the recovery of unjustly retained profits, as well as to recover the costs of diagnostic testing to detect lead poisoning for her and other members of the Plaintiff Class resulting from Defendants' actions.

## JURISDICTION AND VENUE

11.      This Court has subject matter jurisdiction over this nationwide class action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5,000,000.00, exclusive of interest and costs, includes more than 100 Class members, and is a class action in which at least one member of the Class is a citizen of a different state than Defendants. *See* 28 U.S.C. § 1332(d)(2)(A). This Court also has personal jurisdiction over Defendants because they are authorized to do business and in fact do business in this state, and Defendants have sufficient minimum contacts with this state and otherwise intentionally avail themselves of the markets in this state through the promotion, marketing, and sale of their products in this state, to render the exercise of jurisdiction by this Court permissible.

12.      Venue is proper in the District of New Jersey because a substantial part of the

events detailed in Plaintiff's Complaint occurred in this District.

<u>**PARTIES**</u>

13.     Plaintiff Ruth Koronthaly is and has been a resident and citizen of South Orange, New Jersey during the Relevant Period. Specifically, Plaintiff purchased and personally used Cover Girl "Incredifull Lipcolor Maximum Red," which is manufactured, marketed, and/or distributed by P&G, and Maybelline NY "Moisture Extreme Scarlet Simmer," Maybelline NY "Moisture Extreme Midnight Red," and L'Oréal "Riche True Red," which are manufactured, marketed, and/or distributed by L'Oréal, and are several of the concerned lipstick products known to contain dangerous levels of lead. Plaintiff made various purchases of the concerned lipstick products during the Relevant Period and through the summer of 2007. Plaintiff was deceived by Defendants' material omissions in failing to disclose the inclusion of harmful levels of lead in the concerned lipstick products. Defendants could not have fairly represented the concerned lipstick products are safe had they truthfully disclosed that the products contained the complained-of levels of lead. Plaintiff would not have purchased, nor can the other members of the Plaintiff Class be reasonably presumed to have purchased, the concerned lipstick products had they known that they would be exposed to said lead.

14.     Defendant L'Oréal USA, Inc. ("L'Oréal") is a New York Corporation doing business in the state of New York and throughout the United States. This corporation is a United States subsidiary of L'Oréal, a French corporation. L'Oréal sells its products through a variety of mediums, including chain retailers, specialty retailers, and wholesalers. L'Oréal claims to control 15% of the worldwide cosmetics market with sales in excess of €15 billion. In 2006, in North America alone, L'Oréal had $2.1 billion dollars in sales for its consumer cosmetics and beauty products division. L'Oréal manufactures, markets, and distributes such brands as

Maybelline New York, Ralph Lauren, Redken, Lancôme, Vichy, and L'Oréal Paris.  Websites are maintained by L'Oréal that reach out, *inter alia*, throughout the United States, Europe, and most of the world.

15.     Defendant The Procter & Gamble Company ("P&G") is an Ohio Corporation doing business in the state of Ohio and throughout the United States.  P&G sells its products through a variety of methods, including chain retailers, specialty retailers, and wholesalers.  P&G had annual sales of $76 billion in 2007, of which nearly $23 billion was derived from the sale of beauty products. P&G manufactures and distributes, *inter alia*, Cover Girl cosmetics.  P&G operates throughout the world, including in the United States and Europe.  Websites are maintained by P&G that reach out, *inter alia*, throughout the United States, Europe, and most of the world.

### STATEMENT OF FACTS

**A.  DEFENDANTS MARKETED THE CONCERNED LIPSTICK PRODUCTS AS BEING SAFE FOR USE DESPITE THE FACT THAT THEY CONTAIN HARMFUL AMOUNTS OF LEAD.**

16.     Defendants' marketing of the concerned lipstick products affirmatively and impliedly assures consumers that the concerned lipstick products are safe for use.

17.     Despite Defendants' representations, both affirmatively and impliedly, that the concerned lipstick products were and are safe for such use, Defendants distributed the concerned lipstick products that contained the complained-of lead.

18.     Plaintiff and the other members of the Plaintiff Class were deceived by Defendants' material omissions and failure to state that the concerned lipstick products contained harmful levels of lead, and purchased the concerned lipstick products believing that they were safe for application on their lips.

19.     The concerned lipstick products of Defendants include, but are not limited to:

a.   Maybelline NY "Moisture Extreme Scarlet Simmer," Maybelline NY "Moisture Extreme Midnight Red," and L'Oréal "Colour Riche True Red," which are all manufactured, distributed, and/or sold by Defendant L'Oréal; and

b.   Cover Girl "Incredifull Lipcolor Maximum Red," which is manufactured, distributed, and/or sold by Defendant P&G.

20.    The concerned lipstick products were sold at various retailers throughout the United States for a number of years and continuing to the present day.

**B.  DEFENDANTS KNEW OR SHOULD HAVE KNOWN OF THE DANGERS OF THE COMPLAINED-OF LEAD IN THE CONCERNED LIPSTICK PRODUCTS.**

21.    Exposure to lead causes a wide range of adverse health effects.  Even low levels of exposure to lead can result in IQ deficits, learning disabilities, behavioral problems, stunted or slowed growth, and impaired hearing.

22.    At increasingly high levels of exposure, people may suffer kidney damage, become mentally retarded, fall into a coma, or even die from lead poisoning.

23.    Pregnant women and children are particularly vulnerable to lead exposure, as lead easily crosses the placenta and enters the fetal brain, where it can interfere with normal development.

24.    Lead has also been linked to infertility, miscarriage, hormonal changes, menstrual irregularities, and delays in the onset of puberty.

25.    Lead can build up in the body over time, and applying lead-containing lipstick several times a day, every day, can result in significant exposure levels.

26.    During a woman's lifespan, a typical woman can inadvertently ingest approximately 4 pounds of lipstick.

27.     It has been reported that 63% of girls aged 10 and younger use lipstick.

28.     Accordingly, Defendants knew or should have known that manufacturing and distributing lipstick products containing any amount of lead was dangerous to those individuals using them, and that such lipstick products were not safe as Defendants represented them to be.

29.     It is possible, and reasonable, to manufacture lipstick that does not contain lead, and such products are so manufactured and marketed.

**C.   THE CONCERNED LIPSTICK PRODUCTS.**

30.     On October 11, 2007, the Campaign for Safe Cosmetics ("CFS") made public a report that revealed that Defendants' concerned lipstick products contain dangerous levels of lead.

31.     The U.S. Food and Drug Administration ("FDA") has established a limit of 0.1 parts per million ("ppm") for levels of lead in candy, a standard that has been established to protect children from directly ingesting lead.

32.     Lipstick products are directly ingested into the body when an individual licks their lips, eats, etc.

33.     The tests conducted by the CFS revealed that Defendants' concerned lipstick products contain levels of lead in excess of 0.50 ppm, with some as high as 0.65 ppm, which is more than 6 times the FDA's limit on levels of lead in candy.

34.     Specifically, the concerned lipstick products purchased by Plaintiff were found to contain the following levels of lead:

    a.   L'Oréal "Colour Riche True Red":  between .50 ppm and .65 ppm;

    b.   Cover Girl "Incredifull Lipcolor Maximum Red":  between .12 ppm and .56 ppm;

    c.   Maybelline NY "Moisture Extreme Midnight Red":  .18 ppm; and

d.   Maybelline NY "Moisture Extreme Scarlet Simmer":  .11 ppm.

35.   Plaintiff purchased the above-listed lipstick products and applied them to her lips.

36.   To date, Defendants have not issued a recall of the concerned lipstick products or offered compensation, nor have they engaged in responsible marketing advising against the use of the concerned lipstick products.

37.   Moreover, as a result of Defendants' misleading, inaccurate, and deceptive practices, and their negligent and reckless conduct, Plaintiff and the other members of the Plaintiff Class have been exposed to a known hazardous substance. As a result of such exposure, these individuals are at an increased risk of being poisoned by lead and may have already been so poisoned and adversely affected.  Accordingly, Plaintiff also seeks to recover the purchase price of the concerned lipstick products which, but for Defendants' conduct as described herein, would not have been paid, the costs of diagnostic testing necessary to detect lead poisoning for herself and the other members of the Plaintiff Class resulting from Defendants' actions, as well as injunctive relief correcting the false perception created in the public of Defendants' omissions as above stated.

## CLASS CERTIFICATION

38.   This action is brought as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons throughout the United States and its territories who purchased for use and not resale lipstick products that contained the complained-of lead, which were marketed, manufactured, and/or distributed, or placed in commerce for sale, by L'Oréal and/or P&G, from the first sale of the concerned lipstick products to the present, but not earlier than ten years from the filing of this Complaint.  Excluded from the class are each of Defendant's officers and directors.

39.   Membership in the Class is so numerous as to make it impractical to bring all

Class members before the Court.  It is estimated to be in the millions.

40.    Plaintiff's claims are typical of those of the Plaintiff Class, all of whom have suffered harm due to Defendants' uniform course of conduct.

41.    There are numerous and substantial questions of law and fact common to members of the Plaintiff Class which control this litigation and predominate over any individual issues pursuant to Rule 23(b)(3). These common issues include, but are not limited to:

a)  Whether the concerned lipstick products are defective;

b)  Whether the concerned lipstick products are inherently dangerous;

c)  Whether, as a result of Defendants' respective conduct, Plaintiff and the other members of Plaintiff Class have been exposed to a known hazardous substance;

d)  Whether early detection, through medical testing, of lead poisoning is made necessary and/or advisable by Defendants' manufacturing, marketing, and distribution of lipstick products containing lead;

e)  Whether Plaintiff and the other members of the Plaintiff Class are entitled to injunctive relief;

f)  Whether Defendants have been unjustly enriched; and

g)  Whether Defendants' respective conduct amounts to an unfair and deceptive practice under the New Jersey Consumer Fraud Act, other New Jersey law and/or similar laws of other states.

42.    Defendants' respective conduct is such that it is appropriate that there be final injunctive relief to enjoin its conduct with respect to the Plaintiff Class as a whole pursuant to Rule 23(b)(2).

43.    A class action is the appropriate method for the fair and efficient adjudication of this controversy for the following reasons:

a)    Without a class action, the Plaintiff Class will continue to suffer damage, Defendants' violations of the law or laws will continue without remedy, and Defendants will continue to enjoy the fruits and proceeds of their unlawful misconduct;

b)      Given (i) the substantive complexity of this litigation; (ii) the size of individual Plaintiff Class members' claims; and (iii) the limited resources of the Plaintiff Class members, few, if any, Plaintiff Class members could afford to seek legal redress individually for the wrongs Defendants have committed against them;

c)      This action will foster an orderly and expeditious administration of the Plaintiff Class members' claims, economies of time, effort and expense, and uniformity of decision; and

d)      Inferences and presumptions of materiality and reliance are available to obtain class-wide determinations of those elements within Plaintiff Class members' claims, as are accepted methodologies for class-wide proof of damages; alternatively, upon adjudication of Defendants' common liability, the Court can efficiently determine the claims of the individual Plaintiff Class members; and this action presents no difficulty that would impede the Court's management of it as a class action, and a class action is the best (if not the only) available means by which members of Plaintiff Class can seek legal redress for the harm caused them by Defendants.

## CLAIMS FOR RELIEF

## COUNT I

(Violations of Consumer Protection Laws)

44.     Plaintiff re-alleges paragraphs 1 through 43 as if fully set forth herein.

45.     This is a claim for violations of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8–1, *et seq.*, and those other state consumer protection statutes which are in all material respects similar to it.

46.     Section 56:8-2 of the New Jersey Consumer Fraud Act, provides, in pertinent part:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled,

10

deceived or damaged thereby, is declared to be an unlawful practice; provided, however, that nothing herein contained shall apply to the owner or publisher of newspapers, magazines, publications or printed matter wherein such advertisement appears, or to the owner or operator of a radio or television station which disseminates such advertisement when the owner, publisher, or operator has no knowledge of the intent, design or purpose of the advertiser.

47.    Section 56:8-2.11 of the New Jersey Consumer Fraud Act further provides:

Any person violating the provisions of the within act shall be liable for a refund of all moneys acquired by means of any practice declared herein to be unlawful.

48.    Plaintiff and the other Plaintiff Class members are "consumers" or "persons," as defined and construed under N.J.S.A. § 56:8–1(d), and other states' Consumer Protection Laws.

49.    Defendants' conduct as alleged herein occurred in the course of trade or commerce.

50.    Defendants' marketing through affirmative and implied representations of the concerned lipstick products as being safe for use constitutes an unfair or deceptive trade practice.

51.    Upon information and belief, Defendants knew or should have known of the lead in the concerned lipstick products and the dangers associated with the inclusion of lead, as well as the resulting lack of fitness for use, at all material times, but did not disclose the defect to consumers.

52.    Even though Defendants knew or should have known of the defective nature of the concerned lipstick products, they continued to sell said products to consumers without properly disclosing or correcting the defect, intending that consumers rely on their representation that the concerned lipstick products were safe for use.

53.    Defendants' sales practices were deceptive, misleading, and intended to increase their own profits to the detriment of consumers. Defendants have profited from their respective

uniform deceptive practices and marketing campaigns, in that Defendants were able to sell hundreds of thousands of the concerned lipstick products that they could not have sold absent their deceptive practices, including affirmative and implied representations and omissions, causing Plaintiff and the Plaintiff Class damages.

54.     Plaintiff and the other members of the Plaintiff Class were deceived by Defendants' failure to disclose the dangers of the concerned lipstick products that contained improper levels of lead, and Defendants' respective conduct facilitated the sale of the concerned lipstick products.  Had Defendants properly disclosed the fact that said products contained lead, said sales would have been prevented.

55.     Plaintiff and the other members of the Plaintiff Class would not have purchased the concerned lipstick products if Defendants had disclosed the dangers of their lipstick products, including that such products contained lead as aforestated.

56.     Plaintiff and other Plaintiff Class members suffered ascertainable losses causally connected to Defendants' deceptive and unfair trade practices. Specifically, as a result of Defendants' deceptive and unfair trade practices, Plaintiff and the other Plaintiff Class members suffered monetary losses, i.e., the purchase price of the concerned lipstick products which would not have been expended had Defendants disclosed the lead content of their respective products, which themselves are unfit for their intended purpose, and further can be expected to suffer the future cost of medical monitoring necessitated by their exposure to the lead in Defendants' concerned lipstick products.

57.     By reason of the foregoing, Defendants are liable to Plaintiff and the other Plaintiff Class members in an amount to be proved at trial, including, but not limited to, the purchase price of the concerned lipstick products, treble damages, attorneys' fees and litigation

expenses or other penalties as may be appropriate under applicable law.

## COUNT II

(Breach of Implied Warranty Pursuant to the U.C.C.)

58.　　Plaintiff re-alleges paragraphs 1 through 43 as if fully set forth herein.

59.　　Under the Uniform Commercial Code in New Jersey and in other states, there exists an implied warranty of merchantability.

60.　　Defendants, in the manufacture, production, and sale of the concerned lipstick products, impliedly warranted to Plaintiff and the other members of the Plaintiff Class that the products were merchantable and were fit for their ordinary and particular purpose, application on one's lips.

61.　　Defendants breached the implied warranty of merchantability of fitness for ordinary purpose and fitness for a particular purpose by selling the concerned lipstick products that are dangerous and cannot safely be used for their ordinary purpose, because they contain the complained-of lead.

62.　　Defendants' concerned lipstick products were not merchantable because they could not safely be used for their ordinary, particular, and intended purpose.

63.　　Defendants knew or should have known that the concerned lipstick products did not meet the capabilities as represented and marketed.

64.　　Plaintiff and the other members of the Plaintiff Class have been and will be damaged, and have suffered and will suffer direct economic damage, including the cost of the concerned lipstick products and the future cost of medical monitoring necessitated by their exposure to the lead in Defendants' concerned lipstick products.

65.　　By reason of the foregoing, Defendants are liable to Plaintiff and the members of the Plaintiff Class in an amount to be proved at trial.

13

## COUNT III

(Breach of Implied Warranty Pursuant to the Magnuson-Moss Warranty Act)

66.     Plaintiff re-alleges paragraphs 1 through 43 as if fully set forth herein.

67.     The Magnuson-Moss Warranty Act provides for a civil action by consumers for failure to comply with implied warranties arising under state law.  *See* 15 U.S.C. § 2310 (d)(1).

68.     Defendants, in the manufacture, production, and sale of the concerned lipstick products, impliedly warranted to Plaintiff and the other members of the Plaintiff Class that the concerned lipstick products were merchantable, and were fit for their ordinary and particular purpose, application on one's lips.

69.     Defendants breached the implied warranty of merchantability of fitness for ordinary purpose and fitness for a particular purpose under New Jersey law and other states' laws by selling the concerned lipstick products, which are dangerous and cannot safely be used for those purposes, because they contain the complained-of lead.

70.     Defendants' concerned lipstick products were in fact not merchantable because they could not safely be used for their ordinary, particular, and intended purpose.

71.     Defendants knew or should have known that the concerned lipstick products did not meet the capabilities as represented and marketed.

72.     Plaintiff and the other members of the Plaintiff Class have been and will be damaged, and have suffered and will suffer direct economic damage, including the cost of the concerned lipstick products, and the future cost of medical monitoring necessitated by their exposure to the lead in Defendants' concerned lipstick products.

73.     By reason of the foregoing, Defendants are liable to Plaintiff and the other members of the Plaintiff Class in an amount to be proved at trial.

**COUNT IV**

(Strict Liability)

74.     Plaintiff re-alleges paragraphs 1 through 43 as if fully set forth herein.

75.     Defendants are strictly liable for damages because:

      a)     they placed the concerned lipstick products in the stream of commerce;

      b)     the condition of the concerned lipstick products—containing lead—rendered them unreasonably dangerous;

      c)     the inherently dangerous condition existed when the product left the control of Defendants; and

      d)     the condition was a proximate cause of injury.

76.     Plaintiff and the other members of the Plaintiff Class may recover for purely economic loss because their damages are proximately caused by Defendants' intentional, false representation that the concerned lipstick products are safe for use when, in fact, they are not.

77.     Plaintiff and the other members of the Plaintiff Class have been and will be damaged and have suffered and will suffer direct economic loss, including both the cost of the concerned lipstick product and the future cost of medical monitoring necessitated by the presence of lead.

78.     By reason of the foregoing, Defendants are liable to Plaintiff and the other members of Plaintiff Class in an amount to be proved at trial.

**COUNT V**

(Negligence Per Se)

79.     Plaintiff realleges paragraphs 1 through 43 as if fully set forth herein.

80.     Defendants failed to comply with the applicable Federal statute on adulterated cosmetics, particularly the Food, Drug and Cosmetics Act (21 U.S.C. § 301 *et seq*.).

81.     Defendants manufactured, distributed, delivered and/or sold cosmetics that contained a poisonous and deleterious substance, lead, and thus, said cosmetics were prohibited adulterated cosmetics under the Federal Food Drug and Cosmetics Act. Defendants were therefore negligent *per se*.

82.     As a direct and proximate result of Defendants' negligence *per se*, Plaintiff and the other members of the Plaintiff Class were damaged in an amount to be determined at trial.

### COUNT VI

### (Unjust Enrichment)

83.     Plaintiff realleges Paragraphs 1 through 43 as if fully set forth herein, and alleges this Count in the alternative.

84.     Defendants received from Plaintiff and the other Plaintiff Class members certain monies from their purchase of the concerned lipstick products which are excessive and unreasonable, and are the result of Defendants' deceptive conduct.  The concerned lipstick products sold by Defendants were unreasonably dangerous and unfit for their intended purpose.

85.     As a result, Plaintiff and the other members of the Plaintiff Class have conferred a benefit on Defendants, and Defendants have knowledge of this benefit and have voluntarily accepted and retained the benefit conferred on them.

86.     Defendants will be unjustly enriched if they are allowed to retain such funds, and each Plaintiff Class member is entitled to an amount equal to the amount each Plaintiff Class member enriched Defendants and for which Defendants have been unjustly enriched.

87.     By reason of the foregoing, Plaintiff lacks an adequate remedy at law.

88.     By reason of the foregoing, Defendants are liable to disgorge to Plaintiffs and the other members of the Plaintiff Class the amount by which each Plaintiff Class member enriched Defendants and for which Defendants have been unjustly enriched.

## COUNT VII

### (Injunctive Relief)

89.     Plaintiff realleges paragraphs 1 through 43 as if fully set forth herein

90.     By distributing, selling, and/or manufacturing lead-containing lipstick products, Defendants are violating 21 U.S.C. § 331.

91.     Pursuant to 21 U.S.C. § 332, Congress has granted this Court specific jurisdiction to enjoin violations of 21 U.S.C. § 331.

92.     Upon information and belief, Defendants continue to sell, manufacture, and/or distribute the concerned lipstick products. Defendants are therefore currently violating 21 U.S.C. § 331, and upon information and belief will continue to do so, absent an injunction.

93.     Plaintiff and the Plaintiff Class are entitled to a temporary restraining order, preliminary injunction, and permanent injunction, all enjoining Defendants from distributing, selling, and/or manufacturing the concerned lipstick products in violation of 21 U.S.C. § 331.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests that the Court enter an order of judgment against Defendants, including the following:

a.      Certification of the action as a Class Action pursuant to Rule 23(b)(1), (2) and (3) of the Federal Rules of Civil Procedure, and appointment of Plaintiff as Class Representative and Plaintiff's counsel of record as Class Counsel;

b.      Damages in the ascertainable amount of monies paid for the concerned lipstick products;

c.      Damages in the amount of monies paid or to be paid for lead testing of Plaintiff and the other members of the Plaintiff Class;

17

d.      Actual damages, statutory damages, punitive or treble damages, and such other relief as provided by the statutes cited herein;

e.      Pre-judgment and post-judgment interest on such monetary relief;

f.      Injunctive relief enjoining Defendants from distributing, selling, and/or manufacturing adulterated cosmetics;

g.      The costs of bringing this suit, including reasonable attorneys' fees; and

h.      Such other relief to which Plaintiff and the members of the Plaintiff Class may be entitled at law or in equity.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial on any and all counts for which trial by jury is permitted.

Dated:  November 21, 2007

Ruth Koronthaly, individually and on behalf of all others similarly situated,

By:_____

Philip A. Tortoreti (PT4465)
Tortoreti, Tomes & Callahan, P.C.
150 B Tices Lane
East Brunswick, NJ 08816
Telephone:  (732) 257-9100
Facsimile:  (732) 257-9012
*Attorneys for Plaintiff*

*Of Counsel:*

Ben Barnow
Sharon Harris
Blake Strautins
Barnow and Associates, P.C.
One North LaSalle Street, Suite 4600
Chicago, IL 60602
Telephone: (312) 621-2000
Facsimile: (312) 641-5504

Steven M. Hayes
Hanly Conroy Bierstein Sheridan
    Fisher & Hayes LLP
112 Madison Avenue, 7th Floor
New York, New York 10016
Telephone: (212) 784-6400
Facsimile: (212) 213-5349/(866) 800-1008

Lance A. Harke, P.A.
Sarah Clasby Engel, P.A.
Harke & Clasby LLP
155 South Miami Ave., Suite 600
Miami, Florida 33130
Telephone: (305) 536-8220
Facsimile: (305) 536-8229

S. Randall Hood
William A. McKinnon
McGowan, Hood & Felder, LLC
1539 Health Care Drive
Rock Hill, SC  29732
Telephone:  (803) 327-7800
Facsimile:  (803) 328-5656

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)   PLAINTIFFS
RUTH KORONTHALY

## DEFENDANTS
L'OREAL USA, INCORPORATED

**(b)**   County of Residence of First Listed Plaintiff   **ESSEX COUNTY, NJ**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   **NEW YORK, NY**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)**   Attorney's (Firm Name, Address, and Telephone Number)
PHILIP A. TORTORETI, ESQ., TORTORETI, TOMES & CALLAHAN, P.C., 150B TICES LANE, EAST BRUNSWICK, NJ  08816  (732)

Attorneys (If Known)

## II.  BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1   U.S. Government
      Plaintiff

☐ 3   Federal Question
      (U.S. Government Not a Party)

☐ 2   U.S. Government
      Defendant

☒ 4   Diversity
      (Indicate Citizenship of Parties in Item III)

## III.  CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                              and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | | | Under Equal Access |
| | Employment | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | | | ☐ 950 Constitutionality of |
| | Other | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | |

**PERSONAL INJURY**
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
**Habeas Corpus:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

## V.  ORIGIN   (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI.  CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1332
Brief description of cause:
ALLEGATIONS REGARDING VIOLATIONS OF CONSUMER FRAUD ACT AND BREACH OF

## VII.  REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ exceed 100,000,000.00 in aggregate    CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII.  RELATED CASE(S) IF ANY
(See instructions):    JUDGE _____    DOCKET NUMBER _____

DATE
11/21/2007

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

AO 440  (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

District of _____

RUTH KORONTHALY

**SUMMONS IN A CIVIL ACTION**

V.

L'OREAL USA, INCORPORATED

CASE NUMBER:

TO: (Name and address of Defendant)

L'OREAL USA, INC., C/O CORPORATION SERVICE COMPANY, 830
BEAR TAVERN ROAD, WEST TRENTON, NJ  08628

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

PHILIP A. TORTORETI, ESQ.
TORTORETI, TOMES & CALLAHAN, P.C.
150B TICES LANE
EAST BRUNSWICK, NJ  08816

an answer to the complaint which is served on you with this summons, within _____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

_____
CLERK

_____
DATE

_____
(By) DEPUTY CLERK

AO 440  (Rev.  8/01)  Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐  Served personally upon the defendant.  Place where served:

☐  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left:

☐  Returned unexecuted:

☐  Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL  $0.00 |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____        _____
                              *Date*                               *Signature of Server*


                                                 _____
                                                 *Address of Server*

_____
(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

AO 440  (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

_____ District of _____

RUTH KORONTHALY

V.

L'OREAL USA, INC, ET.AL

### SUMMONS IN A CIVIL ACTION

CASE NUMBER:

TO: (Name and address of Defendant)

THE PROCTER & GAMBLE COMPANY
ONE PROCTER AND GAMBLE PLAZA
CINCINNATI, OHIO

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

PHILIP A. TORTORETI, ESQ.
TORTORETI, TOMES & CALLAHAN, P.C.
150B TICES LANE
EAST BRUNSWICK, NJ  08816

an answer to the complaint which is served on you with this summons, within _____ days after service of this summons on you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

_____
CLERK

_____
DATE

_____
(By) DEPUTY CLERK

AO 440  (Rev. 8/01)  Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER (PRINT) | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant.  Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____        _____
                     Date                              *Signature of Server*

                                    _____
                                              *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.