NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RUTH KORONTHALY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>L'OREAL USA, INC., a New York Corporation, and THE PROCTOR & GAMBLE DISTRIBUTING LLC, an Ohio Corporation,<br><br>Defendants. | Hon. Dennis M. Cavanaugh<br><br>**OPINION**<br><br>Civil Action No. 07-CV-5588 (DMC) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon Defendant The Proctor and Gamble Distributing LLC's ("P&G") motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6); and Defendant L'Oreal USA, Inc.'s ("L'Oreal," collectively with "P&G," "Defendants") motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that P&G's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is **granted**; L'Oreal's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is **granted**; L'Oreal's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6) are **denied** as moot.

I.  **BACKGROUND**

A.  **Factual History**

On October 11, 2007, Plaintiff Ruth Koronthaly ("Plaintiff") discovered that she purchased lipstick containing lead, in levels between .12 parts per million ("ppm") and .65ppm. On that day, the Campaign for Safe Cosmetics ("CFS") published a report, naming specific lipsticks containing allegedly dangerous levels of lead. Specifically, L'Oreal's "Colour Riche True Red" contained between .50ppm and .65ppm; Cover Girl's "Incredifull Lipcolor Maximum Red" contained between .12ppm and .56ppm; Maybelline NY's "Moisture Extreme Midnight Red" contained .18ppm; and Maybelline NY's "Moisture Extreme Scarlet Simmer" contained .11ppm. These levels were all dangerous, compared to the U.S. Food and Drug Administration's ("FDA") limit of .1ppm for levels of lead in candy, established to prevent the direct ingestion of lead by children.

Plaintiff, a regular user of these products, is concerned that Defendants did not recall the subject lipstick products, offer compensation for the allegedly defective products or change their marketing strategies after the study by CFS was published. Plaintiff was also concerned that Defendants allegedly practiced "misleading, inaccurate, and deceptive practices, and their negligent and reckless conduct...have exposed [Plaintiff] to a known hazardous substance." Compl. ¶ 37. Plaintiff asserts that such egregious conduct entitles her to recover the purchase price of the concerned lipstick and to attain the costs of diagnostic testing for potential lead poisoning. Plaintiff requests such relief on the basis that she has been injured by mere exposure to lead-containing lipstick and by her increased risk of being poisoned by lead.

Plaintiff has not, however, complained of any manifest injuries. Plaintiff has not rebutted Defendants' assertion that the FDA does not regulate the presence of lead in lipstick, a product inadvertently ingested, despite the fact that the FDA does regulate the presence of lead in candy, a product directly ingested in large quantities.

**B.     Procedural History**

On March 11, 2008, Plaintiff filed her Amended Complaint as a class action, pursuant to Fed. R. Civ. P. 23(a), (b)(1)-(3) "on behalf of all persons who purchased for use and not resale lipstick containing lead that was manufactured, marketed, and/or distributed by L'Oreal, and on behalf of all persons who purchased for use and not resale lipstick containing lead that was manufactured, marketed, and/or distributed by P&G...not earlier than ten years from the filing of this complaint." Compl. ¶ 2. Plaintiff claims that Defendants knew or should have known that the manufacture of lead-containing lipstick was dangerous to consumers and that Defendants had the reasonable capacity to manufacture lead-free lipsticks.

On these grounds, Plaintiff alleges seven causes of action: violation of consumer protection laws under the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. § 56:8-1 et seq. (Count I); breach of implied warranty pursuant to the Uniform Commercial Code ("UCC") (Count II); breach of implied warranty pursuant to the Magnuson-Moss Warranty Act ("Magnuson-Moss") (Count III); strict liability (Count IV); Negligence *Per Se* (Count V); Unjust Enrichment (Count VI); and injunctive relief pursuant to 21 U.S.C § 331 (Count VII).

Plaintiff asserts that this Court has subject matter jurisdiction because the matter in controversy exceeds $5,000,000.00 and includes more than 100 class members, at least one of

which is a citizen of a different state than Defendants. Compl.¶ 11; 28 U.S.C. § 1332(d)(2)(A). Plaintiff also alleges personal jurisdiction, asserting that Defendants have sufficient minimum contacts with the State and that they otherwise intentionally avail themselves of the State's benefits *via* the "promotion, marketing, and sale of their products" in the State. Compl. ¶ 11. Furthermore, Plaintiff alleges that this venue is appropriate because a substantial portion of the alleged events occurred in New Jersey.

P&G filed a motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction, and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted.

L'Oreal filed a motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted.

## II.  STANDARD OF REVIEW

### A.  Fed. R. Civ. P. 12(b)(1)

Upon a Fed. R. Civ. P. 12(b)(1) motion addressing the existence of subject matter jurisdiction over a plaintiff's complaint, "no presumptive truthfulness attaches to a plaintiff's allegations." Martinez v. U.S. Post Office, 875 F. Supp. 1067, 1070 (D.N.J.1995) (citing Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). "Accordingly, unlike a Rule 12(b)(6) motion, consideration of a Rule 12(b)(1) jurisdiction-type motion need not be limited; conflicting written and oral evidence may be considered and a court may 'decide for itself the factual issues which determine jurisdiction." Id. (citing Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir.) Cert. denied, 454 U.S. 897 (1981)). "When resolving a factual challenge, the

4

court may consult materials outside the pleadings, and the burden of proving jurisdiction rests with the plaintiff." Med. Soc'y of N.J. v. Herr, 191 F. Supp. 2d 574, 578 (D.N.J. 2002) (citing Gould Elecs. Inc. v. U.S., 220 F.3d 169, 176, 178 (3d Cir. 2000)). "Where an attack on jurisdiction implicates the merits of plaintiff's [F]ederal cause of action, [however,] the district court's role in judging the facts may be more limited." Martinez, 875 F. Supp. at 1071 (citing Williamson, 645 F.2d at 413 n.6).

### B.   Fed. R. Civ. P. 12(b)(2)

"It is well-established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003) (citing Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir. 2002)). When a defendant raises a jurisdictional defense, however,

> the burden falls on the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper. Carteret Sav. Bank v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992). The plaintiff meets this burden and presents a prima facie case for the exercise of personal jurisdiction by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state."

Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n, 819 F.2d 434 (3d Cir. 1987)). In this case, Plaintiff must establish that sufficient contacts exist between Defendants and New Jersey in order to defeat Defendants' challenge to this Court's jurisdiction.

### C. Fed. R. Civ. P. 12(b)(6)

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998). If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In Bell Atl. Corp. v. Twombly, the Supreme Court clarified the Fed. R. Civ. P. 12(b)(6) standard. See 127 S.Ct. 1955 (2007). Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." Twombly, 127 S.Ct. at 1968 (citing Conley, 355 U.S. at 45-46). Instead, the Supreme Court instructed that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 127 S.Ct. at 1965.

### III. DISCUSSION

#### A. P&G's Motion to Dimiss

P&G requests that this Court dismiss Plaintiff's Complaint against it pursuant to three rules: Fed. R. Civ. P. 12(b)(1), Fed. R. Civ. P. 12(b)(2), and Fed. R. Civ. P. 12(b)(6). First, P&G states that Plaintiff does not have standing because she has not alleged an injury-in-fact, therefore depriving this Court of subject matter jurisdiction due to the absence of an actual case or

controversy. See U.S. Const., Art. III § 2. P&G remarks that the future prospect of injury, of Plaintiff's increased risk of lead poisoning, does not constitute a present injury-in-fact. Second, P&G states that this Court cannot exercise personal jurisdiction over P&G because P&G does not maintain connections in New Jersey. P&G remarks that it is neither authorized to conduct business in the State nor does it conduct business in the State. Both general and specific jurisdiction, according to P&G, are lacking. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Hanson v. Denckla, 357 U.S. 235, 253 (1985). Third, P&G states that Plaintiff fails to state a claim upon which relief may be granted because the Complaint lacks factual allegations to support a claim. Specifically, P&G states that Plaintiff has not provided sufficient facts to demonstrate any personal injury or economic loss, to establish that the concerned products were unfit for ordinary use or that P&G engaged in any unlawful activity.

Plaintiff rebuts two of P&G's arguments. First, Plaintiff asserts that she has standing to bring her claim because she suffered an injury-in-fact because she was denied the benefit of the bargain when she purchased the lead-containing lipstick. Second, Plaintiff alleges that she has stated an appropriate claim upon which relief could be granted because she has alleged unlawful conduct, ascertainable loss and sufficient factual allegations to support her claims. Plaintiff does not rebut P&G's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. This Court disagrees with Plaintiff's argument.

While Plaintiff may suffer an injury at some point in the future, this potentiality does not provide her with an injury-in-fact. This Court has jurisdiction of actual cases and controversies,

7

which is partially determined by whether a plaintiff has standing to sue. U.S. Const. Art. III, § 2; see also Whitmore v. Arkansas, 495 U.S. 149, 154-55 (1990); Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102 (1998). In fact, "Article III standing goes to the very heart of a court's subject matter jurisdiction. It determines whether the court has jurisdiction to resolve a dispute on the merits." In re Franklin Mut. Funds Fee Litigation, 388 F. Supp. 2d 451 (D.N.J. 2005). As stated in Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992), a plaintiff has standing when:

> First, the plaintiff must have suffered an "injury in fact"- an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan, 504 U.S. at 560-61 (citations and internal quotations omitted). In other words, "[t]he triad of injury in fact, causation, and redressability comprises the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." Steel Co., 523 U.S. at 103-04. Plaintiff, however, does not have standing because she has not alleged an injury in fact consistent with Lujan. Rather than allege an injury "(a) concrete and particularized and (b) actual or imminent," Plaintiff has alleged an injury both conjectural and hypothetical. Lujan, 504 U.S. at 560.

Injury in fact "must be concrete in both a qualitative and temporal sense. The complainant must allege an injury to himself that is "distinct and palpable." Whitmore, 495 U.S. 149, 155 (1990). The injury must not be abstract or subjective. See Id.; Laird v. Tatum, 408

8

U.S. 1, 13-14 (1972). Allegations of a potential future injury, or the mere possibility of a future injury, will not establish probable cause. See Whitmore, 495 U.S. at 158; Employer's Ass'n of New Jersey v. New Jersey, 601 F. Supp. 232, 238 (D.N.J. 2003), aff'd 774 F.2d 1151 (3d Cir. 1985). Similarly, a demand for damages, by itself, will not establish injury in fact. See Rivera v. Wyeth-Ayerst, 283 F.3d 315, 320 (5th Cir. 2002). Furthermore, "[t]he standing inquiry does not change in the context of a putative class action....[S]tanding cannot be predicated on an injury which the plaintiff has not suffered, nor can it be acquired through the back door of a class action." In re Franklin Mut. Funds Litigation, 388 F. Supp. 2d at 461.

Cases analogous to the present matter have routinely failed. For example, in Williams v. Purdue Pharma Co., 297 F. Supp. 2d 171 (D.D.C. 2003), the plaintiffs' allegation of economic injury in a products liability action was insufficient to establish an injury-in-fact. The plaintiffs had suffered no ill effects from their consumption of Oxycontin and had not alleged that any future harm was expected. Williams, 297 F. Supp. 2d at 175-78. The court remarked that benefit of the bargain injury could not sustain a claim of injury in fact. Id. Similarly, in Walus v. Pfizer, Inc., 812 F. Supp. 41 (D.N.J. 1993), the plaintiff had watched a television program that worried him about the safety of his heart valve. Although his doctor assured him that the heart valve was suitable and safe, the plaintiff filed suit. Walus, 812 F. Supp. at 42. The Walus Court dismissed the suit, stating that the potential and remote chance that the heart valve would fail did not satisfy the requirements of injury in fact. Id. at 44-45. Just as the plaintiffs in Williams and Walus failed to present an injury in fact, so too does Plaintiff here. For these same reasons, Plaintiff's argument must fail.

9

Further, Plaintiff's allegations of a potential future injury are too remote and abstract to qualify as a concrete and particularized injury. Similar to the plaintiffs in <u>Williams</u> and <u>Walrus</u>, Plaintiff has not alleged any present injury. Plaintiff's demand for damages does not establish injury-in-fact either. Plaintiff bought lipstick and used the lipstick, only complaining that the lipstick's levels of lead are unsatisfactory to her. The FDA, moreover, does not provide limitations on lead levels in lipstick. The FDA does not otherwise regulate lipstick. Plaintiff cannot seek a remedy for a harm that she has not actually or allegedly suffered.

Plaintiff does not have standing to bring her claim because she does not satisfy <u>Lujan</u>'s requirement of injury-in-fact. Hence, Plaintiff's Complaint against P&G must be dismissed because Plaintiff lacks standing to bring her claim.

For these reasons, P&G's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is **granted**; P&G's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) is **denied** as moot; P&G's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is also **denied** as moot.

### B.   L'Oreal's Motion to Dismiss

L'Oreal requests that this Court dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). L'Oreal states that Plaintiff's Complaint alleges no injury, harm or ascertainable loss. Furthermore, according to L'Oreal, Plaintiff has not provided any specific facts to support her CFA claim and the rest of Plaintiff's Complaint does not state any cause of action upon which relief could be granted. Specifically, L'Oreal alleges that Plaintiff has not alleged sufficient facts to meet the specificity requirements of Fed. R. Civ. P. 9(b) and the requirements of Fed. R. Civ.

P. 8(a). Because Plaintiff has not adequately alleged an injury, harm or ascertainable loss, she lacks Article III standing to bring her claim.

For the same reasons that this Court grants P&G's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), this Court grants L'Oreal's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff has failed to state a claim upon which relief could be granted because she lacks Article III standing. Plaintiff has not alleged injury, harm or ascertainable loss. Therefore, this matter is not an actual case or controversy and L'Oreal's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is **granted**.

### IV.   CONCLUSION

For the reasons stated, it is the finding of this Court that P&G's motion for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) is **granted**; P&G's motion for dismissal pursuant to Fed. R. Civ. P. 12(b)(2) is **denied**; P&G's motion for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is **denied**; L'Oreal's motion for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is **granted**. An appropriate Order accompanies this Opinion.

_____
Dennis M. Cavanaugh, U.S.D.J.

Date:    July 25, 2008
Orig.:   Clerk
cc:      All Counsel of Record
         Hon. Mark Falk, U.S.M.J.
         File

11